24-635 BNP Paribas v. New Mexico State Investment Council, etc., etc., etc. I won't spare you all the full reading of the captions today. So we have Attorney Bennett, and I understand you would like to reserve three minutes for rebuttal. Is that right? Yes, Your Honor. And I understand probably both sides you already have a game plan for how you'd like to spend the oral argument. If I could ask each of you to perhaps begin by addressing the jurisdictional question that we asked you to brief. We did get your supplemental letters, we appreciate that very much, but perhaps you could start off by telling us whether we have the power to hear this case or not. Sure. May it please the Court. Jennifer Bennett on behalf of New Mexico State Pension Funds and Investment Council. The bank's efforts to preclude the New Mexico Funds claims run afoul of three basic requirements of class action preclusion. So why do we have to, do we, do you believe we have jurisdiction under 1291? Yes. Why? Because the banks asked the district court to grant an injunction in joining the New Mexico Funds claims, and the court granted that injunction. There's nothing left for the court to do. I also think there's, if you don't think... We've said in the leading cases, Tronox and Wilder, that for 1291 jurisdictional purposes, there's got to be a finding of contempt or sanction has to be imposed that's not compliant. We don't have either of those here. So a couple points on that, and I promise to answer that question, but before I do, I just want to make one quick overall point, which is I don't think this court needs to reach that question, and that's for the following reason. We need to reach the question. We need the jurisdictional... That's why I'm asking you about it. Yes, Your Honor. We have an independent obligation to confirm our own jurisdiction. Of course. What I meant by that is just that Tronox says that where an injunction expands the reach, where an order expands the reach of a previous injunction, there's jurisdiction because that's a modification. That didn't happen here. I apologize, Your Honor. No, go ahead. That didn't happen here. Judge Koch did not expand the reach of her previous injunction, did she? She did, and here's why. So when the injunction was issued, then and now, everyone agreed that the injunction was limited by the scope of the identical factual predicate doctrine and the adequacy of representation doctrines. If you look at JA 575 to 76, you'll see her order, which is the order approving the settlement and issuing the injunction, and what that order says, it says very clearly that the settlement release, which is what is being enforced by the injunction, is limited by the identical factual predicate doctrine and the adequacy of representation. What if she hadn't said that? If she hadn't said that, I think it would be a more difficult question. Why? Because potentially you could imagine that there might be some fight about whether it did, but I don't think it would be that much more difficult because we assume that injunctions and settlement releases comply with the law. I guess that's my point. I guess why does it matter whether she said it or didn't? I thought your argument is that the settlement agreement must be interpreted against these background principles of law. Therefore, this is what it has always meant and this is what it means today. I think that's exactly right. I think the fact that she said it and that all parties understood it really reaffirms that point. For example, you could imagine if she said this injunction, it doesn't matter. In the text of the injunction, if it said it doesn't matter whether the subsequent case has the identical factual predicate, then I think you would have had to appeal then. I think a change from that would not be a change because the injunction would explicitly violate the law. What if those doctrines, hypothetically, provide a basis for challenging the settlement agreement at the time it's entered, but do not provide a basis for what is, let's describe this as a collateral attack. Indulge me with that description. Then, in theory, the district court might have been correct in saying this is what I'm doing now, but if you don't think it's what I'm doing, if you don't think that there's been adequate representation and all this stuff, well, then you know what? If you haven't spoken up now, too late. I think that would be true if we thought that the release didn't say that. For example, if it was clear that the release or the injunction said, in so many words, it doesn't matter whether the identical factual predicate applies, then yes, I think you would have had to challenge that then. But as Judge Cote explained Why then and why not because it's written now? Because then it would have been very clear that that injunction violated the law. It would have been obvious. You could have challenged it then. As Judge Cote explained, the problem is that where the injunction is meant to comply with the law, meant to comply with these doctrines, you can't actually tell whether how it's going to be applied to any particular claim. And Judge Cote explained this when she entered it. It's at JA 576. You can't tell how it's going to apply to any particular claim until that claim comes up. And so it's not possible. The New Mexico funds had no idea that these auctions were being rigged. And I think it's pretty clear that the identical factual predicate would bar applying the release to such different claims than the claims that were brought in the New York litigation. So when you have Judge Cote actually saying, I'm going to apply the identical factual predicate, you assume the injunction complies with the law. You don't know claims are going to arise later. And you don't know that she's actually not going to do that. That is, it would have been impossible for them to challenge that in 2016. So both in Wilder and Chonax, we were quite clear that a decision concerning compliance with an injunction is not final unless accompanied by a finding of contempt or citation. That's 1995. About a decade later, we said, we dismissed, this is in Chonax, we dismissed an appeal for lack of jurisdiction under 1291 in circumstances where the district court's order made no contempt finding, much less an assessment of sanctions, in which case we concluded that the ruling was not final as contemplated by 1291. What's your response to that? So a couple points on that. One, under 1291, I think Chonax is very clear. And it says here, as in Wilder, the order was issued in the context of a pending contempt motion. And then it goes on to say, therefore, that is because it was issued in the context of a pending contempt motion. Therefore, the order's not final. And then it says, until. But the case said, specifically said, didn't talk about a pending motion to hold someone in contempt. It talked about a contempt finding, which we don't have here. That's right. But that language is in the context of a contempt proceeding having been brought in the first place, which I'll note, it could not have been brought here. But I thought, if I could jump in on that point.  I thought in Chonax, the party who had initiated the contempt proceeding dropped any motion for sanctions. So there was, in fact, nothing more that was going to happen in that case. But we nevertheless said it's not final. Under 1291, now, obviously, you can get into the. I understand you're 1292, which is a different argument. So if we could just compartmentalize our argument on the 1291 finality question first. Of course. Before we get into the question of modification.  Why doesn't that, the fact that Chonax was willing to say there's no final order here, notwithstanding the fact that there was nothing further to do, why doesn't that defeat your 1291 argument here? It's not clear to me from Chonax. It's not clear that Chonax thought that there was nothing further to do. And again, Chonax said, first, it describes what happened as giving the plaintiffs a grace period. So if you look at the briefs. They recognized that there was no motion for sanctions. So what do you think the Chonax panel thought was still out there to do? I think the contempt was still out there. And I think if you look at the language in Chonax, it reads as if the contempt was still out there. It says it doesn't matter. Essentially, I think what Chonax is saying is it doesn't matter if the other side, once they've initiated contempt proceedings, has decided we don't care about that or is willing to give a grace period. Well, isn't it moot then? Isn't it moot? I mean, courts don't run around enforcing their own injunctions. So if one party doesn't want someone to be held in contempt, I thought generally the court would say, great, case closed. I think that's potentially right. I don't read Chonax as saying that. But even if you disagree with me, I think that's quite different than what's happening here for a couple reasons. So one, in Chonax, and again, when you construe final orders, it's a practical doctrine that really takes account of the situation. In Chonax, what you had are plaintiffs who were involved in the initial issue of the settlement. They were very involved in the negotiation of the settlement. The claim at issue there already existed when the injunction was issued. And so they already had a chance to appeal it. Here, that's not the case. We're talking about absent class members who would have had no way to know. The point is here, if you follow your opponent's view of Chonax, I assume, the outcome would be, don't do anything in New Mexico. Ignore the ruling here from Judge Code. Say explicitly, well, I'm only doing it so I can get a final order. People do that all the time. And let's see. If they initiate a contempt proceeding, then Judge Code can move forward. Maybe they don't move forward, and then you just duke it out in New Mexico, and you see whether New Mexico feels like agreeing with Judge Code. I mean, you can do that, right? I think that actually could cause problems. One is you'd be asking the New Mexico Attorney General just to get appellate review to violate a federal court order, which I think the New Mexico Attorney General is going to be hesitant to do. The second is, if they keep their claims pending in New Mexico, maybe the district court says, yes, we're going to keep going, but maybe the district court in New Mexico just dismisses the claims. Could the New Mexico Attorney General ask Judge Code, I don't know, enter a contempt order with a dollar sanction, just for purposes of finality, Your Honor? We just want to bring it to a close. Potentially, although I think it might be moot if the New Mexico district court dismisses the claim. It's not clear that there'd be . . . Well, no matter what Judge Code does, the New Mexico court could act, right? We don't have appellate jurisdiction over what the New Mexico court does. That's exactly the problem. If we said that Judge Code is wrong, New Mexico's court could look at it and say, well, actually, I read the settlement agreement differently. Sorry, guys, you're out of luck. I'm dismissing this. It's covered. New Mexico court is not bound by anything that happens within the Second Circuit, right? I think that's potentially true. I think it's very unlikely that the New Mexico court would do that, but I also want to know . . . That's a question of likelihood, not a question of whether one is bound or not. Sure, but I also . . . It's just a persuasive decision of a sister court. Perhaps, but I just want to note that all of this is 1291. Yeah, I agree. And there are two 1292 arguments. There's the modification argument, which I was talking about before, and I think that's quite a modest argument. I think no matter what, this court has to, under Tronox, decide whether it was a modification, which then requires looking at the three fundamental class action preclusion doctrines. But the second . . . Let's get to 1292, and I think we're all on the same page, that 1292 gets you here if there is an order granting, continuing, modifying, refusing, and so forth, or dissolving injunctions or modifying to do that. What do you think happened here? So I think, actually, I think the best reading of what Judge Cote did is she granted an injunction. If you look at . . . What page does that appear in the record? Sure. So it is the injunction itself is in the supplemental appendix. It's at page two and three. And what Judge Cote says, what the district court says is . . . The injunction that she issued in 2024. Yeah. Yes. Yes, it's an appeal of the injunction that she issued just now that said she enjoined . . . It's supplemental appendix page two and three. It's explicitly an injunction. It's a separate order from her opinion, and it says the court hereby enjoins the New Mexico plaintiffs from pursuing any claims, as in hereby, from this order. It's a separate injunction she just issued. She granted that injunction. And then, again, it says the New Mexico plaintiffs are enjoined. And she did that at the request of the banks. If you look at the banks' motion to the district court, and this is at docket 646 at page three and 25, the banks specifically asked her to enter an injunction. They said they seek an order not just enforcing the settlement. They sought an injunction. And then Judge Cote, again . . . What's the difference between an order enforcing a settlement? In this circumstance, an order enforcing a settlement and an order entering an injunction. Here, when they want you to stop suing in New Mexico, what's the difference? Because you seem to suggest that those are . . . You're faulting them for not asking for one and instead asking for the other. What's the difference? I'm not faulting them for anything. I'm just noting that this is explicitly an injunction. Well, I think you're suggesting instead of doing one, they did this, and by opting into asking for an injunction, they've triggered appellate jurisdiction. But I'm asking what's the difference if they had done the other thing you said, which is ask for enforcement of a settlement agreement. Would you be arguing that we lacked appellate jurisdiction? No, but I don't think it would be . . . If Judge Cote hadn't explicitly granted an injunction, the text of 1292 gives jurisdiction over the grant of an injunction, and the district court granted an injunction. So if she hadn't granted an injunction, I think there would be other bases for jurisdiction. I think there would be modification, and I think there would be final order jurisdiction. But here, if you don't think there's final order jurisdiction, you still have an injunction, which means you have an interlocutory injunction, and 1292A1 explicitly grants jurisdiction over the granting of an injunction, and that's exactly what the district court said it did. And this court in Commodity Futures Trading said, orders that explicitly grant an injunction meet the plain terms of the appellate jurisdiction statute. If you look at Tronox, Tronox's concern comes from a Seventh Circuit case, Acorn v. Illinois State Board of Elections. If you look at that case, what that case says is where the district court, if you're talking about an order to enforce a settlement, where the district court explicitly grants an injunction, that meets the statute's terms by the plain terms of the statute. So here, you have an injunction. You have an explicit grant of an injunction. 1292A1 says this court has jurisdiction over grants of injunction, I think by that statute's plain terms. If you don't think it's a final order, it meets 1292A1. I realize I'm way over time. I'm happy to adjust. No, that's enough. We've got a lot to talk about. Why don't you take a few minutes? Let's sort of talk back on the merits. Rather than restart, why don't we just talk about the merits? I don't know if we're going to give you a full ten, but why don't we hear you? Yes, we've pushed the jurisdictional question. Why don't we give you some time to talk about the second? The merits.  And I'll start and maybe limit my comments, given the time, on the identical factual predicate doctrine. I think that's the plainest way in which the district court here went wrong and either expanded the injunction from 2016 or granted a new injunction that violated the law. And with this court's doctrine has been really clear. Your client had both bid-sell claims and auction claims, right? Correct, yes. Your client didn't opt out?  Did your client get a check? Yes. I believe so, yes. Cashed the check? I believe so, yes. But that is true in every one of these cases. So take Super Spuds, which is the genesis of this case. In that case, it was at the approval proceeding, but it would have been true. There was no, if it didn't opt out, would have gotten a check and had both kinds of claims. It was both the kinds of claims that were at issue in the case, claims on liquidated contracts, and claims for unliquidated contracts. And what this court said, and this is the genesis of this doctrine, what this court said is the claims on unliquidated contracts, because they don't share an identical factual predicate, could not have been settled in the case about liquidated contracts. And that's even though the claim- This case is not too disparate. This case is different. It is different, but it's different in a way that's helpful to us here, I think. Super Spuds was about one conspiracy. In Super Spuds, there was one conspiracy to manipulate the price of Potato Futures contracts. And what the court said is still, there's not an identical factual predicate, even though we're talking about only one conspiracy to manipulate only one thing. And I'll read you why. And this court said it in Super Spuds. It repeated it in TBK Partners. Here's why. Even though there's the same conspiracy in the same market, the holding of unliquidated contracts after May 7th, the wrongful default on those contracts and the damages caused by that default were not alleged in the settled complaint and they needed to be alleged to approve the unliquidated contracts claim. Can you remind me, what was the procedural context in which the identical factual predicate issue came up in Super Spuds? So in Super Spuds, it was a settlement approval context. So that's up, that's dialing, if we were juxtaposing that procedural posture onto our case, we would be turning the clock back to the time when Judge Coate was approving the settlement agreement to begin with, right? I don't think so, Your Honor. I mean, it would have been that time, but when Judge Coate was approving the settlement agreement, we didn't, as she pointed out, we didn't know what claims in the future might be brought.  I'm just saying, if we were in the same procedural posture as the one in Super Spuds, we would be at the earlier settlement agreement approval stage, right? I know you're arguing that, for various reasons, we still, at this different stage, will apply the identical factual predicate doctrine, but you would agree with me, at least as the predicate point, that we are not in the same procedural posture as Super Spuds, right? Of course, that's right. So we would need to decide two things in your favor on this point. Number one, that the identical factual predicate argument is something that should be applied at this moment. I understand you argue yes, and that, in fact, there was not an identical factual predicate, right? Both of those propositions need to hold for your argument to win on that point, right? That's true, although this Court has already decided the first point. So if you look at American Express Financial Advisor security litigation, that is a case that is in this posture, where the Court looked at the identical factual predicate and it said the identical factual predicate rule applies. So the first is disposed of in this Court already, and there are a number of cases from this Court and from a number of other circuits. If this Court were to go back on that, it would both be conflicting with that case in this Court and also creating a circuit split. So since New Mexico was represented – New Mexico Investment Council was represented by a sophisticated council that had the chance but did not – but elected not to opt out of a class where the release binding class members extended to claims known and unknown arising or in any way related to a credit default transaction, and that went on to elaborate any claims that could have been alleged or were alleged, why doesn't this language bind you? So a few answers to that. One is – Give me your best. Sure. I think the best answer is that everybody understood at the time and the law is clear in this circuit that however broad the scope of a release is on its terms, it is limited by three key doctrines. The identical factual predicate doctrine, the adequacy of representation doctrine, and the notice doctrine. And so every sophisticated council would know more than anyone that whatever the release might purport to say, that the identity would only foreclose, preclude claims that shared an identical factual predicate. Also, adequacy of representation and notice. And I want to talk about why these don't share an identical factual predicate if that's all right. So the New Mexico case, the claim in the New Mexico case is that every time a bond defaults, the banks are getting together and colluding to rig the auction that values that bond. That's the claim in the case. And that claim was before judge code. No, that claim was not before judge code. There is, and I encourage you to search the word auction in the complaint that was before judge code in 2016. What you will find is not a single allegation that the banks are conspiring to rig the auction that values bonds. Not one. You will find two allegations in the New York complaint that has the word auction in them. One is to say that essentially all of the standard features about a credit default swap are necessary for some competitor to sell these credit default swaps. And that includes the ability to have them settle by auction. And you will find another one that says something very similar. You will find not a single allegation, again, not one that says that the banks are colluding to rig the auction. So let's assume we agree with you on that, that this complaint was solely about the marketplace for buying and selling the CDs, not the settling them off later. Is the standard whether the claim was raised or whether it could have been raised? And if it's the latter, how do we process that in evaluating the Common Core Facts Doctrine? Sure. The standard is whether it could have been raised based on these identical facts, based on the facts that are alleged in the complaint. So if you look at Super Spuds and TBK Partners and Burgess, what they all say is the second lawsuit cannot be precluded if it depends on, quote, proof of further facts that were not alleged in the first complaint. So here, I gather your colleague will say, well, it's all the same actors at the same meetings, using the same tools, doing the same colluding. But what you would say is, yeah, but there's a set of allegations about the collusion as it relates to the auctions that's absent from that case. And that's the set of allegations you're making here? Well, I would say no, but it doesn't matter. Because there is an additional set of allegations that you would need to prove the auction rigging complaint. Even if they were right about that, and I don't think they are, again, the core allegation of auction rigging is auction rigging. And there is not a single one of those allegations. And that has to be in the complaint. And we know that from Super Spuds, for example. Super Spuds, again, was one single conspiracy to manipulate one price of one good. And what the court said is that's not enough for the identical factual predicate if you have to prove other things. But in Super Spuds, it was the same conspiracy, but weren't the potential plaintiff classes temporally distinct in that some were the ones who sold their shares before the bottom dropped down and then the other ones who were the ones who lost money when it dropped? They were overlapping just as they were here. So there were some people who had both sets of contracts. In fact, the settlement could only bind people who had both sets, the contracts that were being settled. So the only people at issue in Super Spuds were people who would have been members of both class, just as here. And so I think it cannot be that just because something happens in the same market that it is foreclosed. And I'll note that the- Is it the same market? I mean, I guess I'm wondering about that. Is the market for buying and selling these instruments the same as the market for settling them if there's a default event? I think that's a very good point. And I think the answer to that is no. Really what's going on is they're valuing two different instruments. The first complaint is about the buying and selling of credit default swaps. And as you point out, the second, the New Mexico complaint, is about valuing bonds. It's not actually about valuing credit default swaps at all. There's an interrelation. Valuing bonds that are subject to credit default swaps after a default event of some sort. Right. That's exactly right. And I'd like to point out the practical problem that would happen if you accepted the bank's view of the identical factual predicate. Beyond creating an intra-circuit split and a circuit split, what that would do in practical terms is it would make it impossible to settle anything. Because right now, there's a very clear rule. What you are settling are the claims that could have been brought based on the facts that were alleged in this complaint. Everybody can see what facts were alleged in that complaint. The banks know what other misconduct they may or may not have and what other claims- Is there an impediment to your pursuing the auction issue before Judge Koepp? There are two problems. One is that the auction rigging was not alleged. The class representatives did not get authority to pursue those claims. But the fundamental reason it wasn't alleged and couldn't have been alleged is because nobody knew it was happening. If you look at the New Mexico complaint, what you'll see is that it was concealed for years. So not only was it not alleged, which is sufficient for this doctrine, it could not have been alleged. So your colleagues have said in their briefs across the aisle that there were a couple of complaints that were later sort of merged into the global complaint in which the claim was, at least in general terms raised, that this collusion affected not just the market for the buying and selling of the instruments, but also the settlement and auction. Is that true? And if it is, what's the significance of that fact for your point? So I don't think that's right. And I, again, encourage you to just look at the allegations that they cite. So the best allegation for them, the one that comes the very closest, is there's an allegation. It's JA 253. And again, these are complaints that weren't settled. And there's an out that says, one of the ways we can tell that the banks have control over credit default swaps is they control the auction. That's what it says. That's their highlight complaint. The problem here is not that the banks are controlling the auction. The problem is that they're rigging it, which is to say the banks use their control over the auction to develop a bunch of protocols. We're not saying that's not sufficient for the illegality in the New Mexico case. The problem is that they're violating the protocols that they use their control to develop. And that is nowhere. Again, I encourage you to read every single allegation that they cite in your briefs. Can you explain to me why you didn't, in effect, sell that argument when you accepted part of the $1.8 billion? Because what you agreed to release was that I've noticed claims in any way related to the release claims. And it seems to me that this relates to the release of claims. So a few answers to that. One is the $1.8 billion is a lot of money. I grant you that. But it is a quarter of what the plaintiffs in that class were seeking. So what? Well, it's just to say that it's not a- So you're saying you accepted the terms of the release, cast your check, but you were really looking to, down the road, re-litigate some of these matters that you'd agreed to settle when you signed on to the release? No, Your Honor. And a few reasons for that. The first is, again, nobody knew this was happening. It's not like the goal was to wait. But the second is, everybody- The language in the release clearly contemplated that. Known and unknown arise out of, in any way, related to the CDS transaction. Sure. So claiming that they were contending that there were claims you didn't know about is exactly why your counterparties included that kind of language in the release. Your Honor, but everybody understood. And because Judge Coate held this in her order- Judge Coate held in her order that the release would be limited and had to be limited by law to claims that shared an identical factual predicate. And so when you accepted the money for the release, the defendants said this in their motions before Judge Coate in asking her to approve the settlement. So you're saying that the release didn't mean what it said and that we should proceed to enforce it based on what you intended or what you wanted for your client as opposed to the language of the release. No, Your Honor. And there are two points to that. One is- And I'll tell you what, we've kept you up a long time. I'm going to let you get those two points. Great. Because we've also let you, say, three minutes for rebuttal. Fair enough. And I think I'm going to ask you to make two points, respond to Judge Parker's question, because we're going to see you again. And we want to make sure we have time for your opponent. And I think there are other lawyers here today, too. Sure. So the two points, just in response to your question, is one, Judge Coate's order saying what the injunction means is what everybody would have thought the injunction means. And it's what the law says the injunction means. And so it cannot be that you can enter a release that is potentially unlawful and interpret it in a way that the district court judge said, in her order, this is not what the release means. The second is-  I'm sorry? Can you read to this line? Well, the second is the bank's- You're firm. You're- Somebody. Sure. I'll tell you what, we're going to pause on that moment. Can I just really quickly answer just the one? No, because I'm going to give you three minutes at the end. OK. I appreciate it. I appreciate we've kept you up for a long time. And I think your opponent is realizing that it's not exactly going to be just 10 minutes. So why don't we hear from counsel for the appellees. I am going to try to keep the total amount of time given to each side roughly equivalent so that nobody's had more or less time at the podium. So that'll give you a sense. In fact, why don't we just do that jasmine, just so I don't lose track of the time. I think we kept counsel- Why don't you put 30 minutes on? This is under no circumstances a suggestion that you ought to or need to talk for 30 minutes. Let's start with 20. Let's do 20. And let's just see how this goes. Less is more in general. But let's see how it is. I think, counsel, you probably heard that we spent a lot of time at the beginning on jurisdiction. So if you wouldn't mind, just to keep some sequence to the argument, if you wouldn't mind starting with the jurisdictional question, I think that might be helpful. And maybe, again, try to divide your argument as between the 1291 theory and the 1292 theory. Of course. May it please the court, Shai Voretsky, on behalf of the appellees, let's start with jurisdiction and happy to talk about the identical factual predicate issue as much as the court would like to talk about it or not. Starting with 1291, under Tronox, Tronox construed 1291, there's no jurisdiction in this case. In the injunction enforcement context, there is finality if the plaintiffs refuse to comply and are sanctioned. That's from Tronox. What would that look like in this case? I'm thinking about it seems like New Mexico is essentially deferring to the New York courts. So I'm trying to figure out how one could put oneself in contempt of this injunction. Well, one simple example is that the injunction makes clear that the plaintiffs can't pursue pre-2014 claims. If they nonetheless continue to pursue pre-2014 claims in the New Mexico action. What does that mean if the New Mexico court is like, no? What does that mean? Just submit a filing? Would that be what would trigger the contempt, like some sort of motion that shows they're continuing to pursue the case even if the court isn't? Either that or filing an amended complaint that continued to assert the claims. Those are the sorts of things that could trigger a contempt motion to judge code. And if she granted that motion, that would then be final. Although I'm sure based on this argument, that it might, one might not want to bring a contempt motion because it seems as though the ruling becomes insulated from appellate review on your theory. Well, I don't think it becomes insulated from appellate review if Judge Cote grants a contempt motion, holds them in contempt. No, but somebody's got to make the decision to file a contempt motion and one might not find that helpful if the New Mexico court isn't actually playing ball. Put it another way, if I could follow up on that. I think you control, you could, through your own actions, prevent finality under your theory by just never filing a contempt motion. Does not strike as, seems odd, right, to let one party control whether there's finality or not? It doesn't seem odd and I think Tronox rejected precisely that argument when it said that the plaintiffs here have a choice. They can defy the order if they are then held in contempt that's appealable. If not, then they've chosen not to have that reviewed. Is there any case outside of the context of a contempt proceeding where we've said, oh, we can't review a district court's injunction enforcing a prior order on the grounds of jurisdiction? I understand the Tronox cases, but factually those were in the context of contempt proceedings. I'm just wondering if there's any case not in the context of a contempt proceeding where we've repeated that rule. I'm not aware of any, but a couple of points. One, in Tronox, it was not material whether there was, that there was no pending contempt motion. I think, as Judge Nardini, I think, said earlier, the plaintiffs in that case, or the party in that case, had abandoned the contempt motion. Regardless, this court said there has to be a contempt finding and a sanction before there can be appealability. In fact, the parties there attempted to distinguish wilder where there was a pending contempt motion. And this court said, doesn't matter. Unless there's a contempt and sanctions finding, there's no appealability. Second, an order enforcing a prior injunction is not a new injunction. This court cited in Tronox, it cited the Thomas v. Blue Cross case from the 11th Circuit, which expressly holds that at 594 F. 3rd at 820. This court cited that case in Tronox, page 96, as instructive. That's what Judge Cote did here. While it could be captioned as an injunction, all it is is an order enforcing the prior injunction virtually verbatim. Can I ask you how this could map out? Let's say you're right. Let's say we agree with you, and we say no finality. And for other reasons, we don't have jurisdiction, okay? And we just were to dismiss the appeal. And let's say the plaintiffs, the appellants said, well, you know what? Okay, we're not going to drop the case in New Mexico. We're going to plow forward and dare you to file a contempt motion, which you choose not to because you don't want to come before us again. So this case is sitting there in New Mexico, and then the district judge, I assume, in New Mexico, then has to make an independent decision. Do I dismiss these claims or not, right? Would you agree that the district court in New Mexico is not bound by Judge Cote's decision? I don't think he's bound by Judge Cote's decision. I think Judge Cote is the one who has the jurisdiction and the authority to enforce her own order. Is New Mexico judge authorized to construe her jurisdiction, Judge Cote's, construe her injunction, interpret it? I think the New Mexico judge, as a matter of comedy for lack of a better word, might find her injunction and whatever this court says about it to be instructive. But didn't she, correct me if I'm wrong, didn't Judge Cote retain jurisdiction to interpret or enforce her injunction? Yes, I believe that's right. So doesn't that tie the hands of the New Mexico district judge? I don't think the New Mexico district judge is the one who would be enforcing her injunction. We think it's Judge Cote. Yes. So if they are right, what's their procedural path? What are they supposed to do? If they can either comply with Judge Cote's order. They think it's wrong. They think Judge Cote missed the ball. What do they do? If they think she's wrong at that point, I think they either defy the order and wait for a contempt motion. And let's say you don't file one. And let's follow up on that. Assume you don't file one. Okay. What else? And then so they say, you know what, we're leaving our claims and we're going forward to New Mexico anyway. And you think, we don't want to see what the Second Circuit has to say about this. We'd rather roll the dice in New Mexico. So you do that. No contempt motion. Then what happens in New Mexico? I think at that point, so we're assuming here that they are complying with the injunction? No, I'm sorry. The assumption is that they say we're not going to comply with Judge Cote's order. Right. We're going to go forward with our claims. We're not going to voluntarily dismiss or withdraw our claims in New Mexico. And then your team says, well, we're not going to file a contempt motion before Judge Cote. So under your view, there's never finality here. And nobody can take an appeal to us. I guess where I'm wondering is, let's say whatever New Mexico's district court does, are they entitled, A, to review or second guess what Judge Cote has said about her own injunction? And number two, whatever New Mexico's district court said, is that then reviewable by their court of appeals out in, I guess it's . . . Denver? I think it's Denver. Or is it just . . . is the idea that in your view, whatever Judge Cote says is basically neither interlocutory nor final and therefore never reviewable by anyone? I think she needs to be the one construing her order. Right. And let's assume she gets it wrong. Let's say that she says that they can't sue Disney about Mickey Mouse. It's wrong. It's just so wrong. But you say, well, that's not final because she's just enforcing a settlement order, right? So it's not final. I mean maybe then you would say, well, that's clearly a modification because it's such a blatant misinterpretation. Well, let's say it's not a blatant misinterpretation. Fill in the blank. Take out Mickey Mouse. Are you saying that unless she just blatantly does something that's so completely off the wall that whatever she does, even if it's wrong, can't be reviewed by anyone absent the contempt? I think that is what Tronox holds. Tronox, when it says, when assessing jurisdiction, there is a deferential standard to whether the district court has plausibly interpreted its own order. Now, if Judge Codin is— Now we're getting into 1292, right, about whether it's a modification or not? Yes. And what deference we give about whether it's really modification. I'm just still trying to stay on the 1291 point, at least for a moment longer, maybe not too much longer. But it does seem to suggest that you'll never have any finality. Under your view, never, ever, ever going to have any finality unless there's a contempt finding. And even then, we've said contempt findings are not final. You need sanctions, too. I think that is what Tronox holds. There is the possibility, and Judge Nardini, your question to Ms. Bennett suggested it, whether there is a way that the plaintiffs themselves could go to Judge Cote in order to manufacture finality. I think that would be a novel situation. I don't know the answer to that. Most people don't say, please hold me in contempt and please give me a dollar in sanctions. Right, right. It's a novel situation. I don't know what would be the answer to that. But again— But if they did that—actually, I just want to play that out. Let's assume that they went back to Judge Cote and said, you know what, Judge, we intend to flout your injunction. But not because we don't respect you, but because only—because the Second Circuit has said otherwise there's no appellate jurisdiction. We'd like to bring this to a close. And Judge says, yeah, okay, that's fine. I'm going to enter a finding of contempt, but not based on malice or anything. All you're trying to do is wrap this up, bring it to an end, and I'm fining you a nominal amount of $1. In that case, you would agree we've got jurisdiction to review, right? So I'm not sure—again, it's a novel situation. I'm not sure that she actually could do that because if we don't see— Well, assume she does. The whole point is she does something we're going to review and say whether it's good or bad or indifferent, right? Assume she does. They say she shouldn't have done what she did already. That's the whole reason we have a job. People claim that district judges do what they shouldn't. So what happens? Assume she does. They file the motion. They say hold us in contempt, fine us $1, enter a judgment. She does it. Then what is my question? If she does that, I think that under Tronox you've satisfied or they've satisfied the terms of Tronox. And I guess then the question is aren't we just spinning our wheels on formalities? First, I don't think so. First, jurisdiction often does turn on formalities, but jurisdictional rules are important even when they seem formalistic. Second, I don't know that Judge Cote actually could do that. I take her point that district judges do things they're not authorized to do all the time, but I don't know that— Not all the time. On rarity. Today she did exactly what she was supposed to because I'm the applicant. So what about 1292? Is there jurisdiction under that? So there isn't jurisdiction under 1292. Why? Again, Tronox said a district court modifies an injunction if it extends the injunction beyond its original reach. That's not what Judge Cote did here. Her enforcement order below enjoined plaintiffs from doing things, and I can read it to you, we're limited on time, but she lifted language directly from her prior order. She simply enjoined the plaintiffs and enjoined them from violating her prior order as applied here. That's not modifying the order. It's not continuing the order because it's not extending the time frame. It's not granting a new injunction. It's simply an order enforcing a prior injunction. It's also not refusing or dissolving an injunction, so it doesn't satisfy any of the terms of 1292. So are they remedialists? I'm sorry? Are they remedialists? I think it takes us back to the earlier conversation we were just having in the context of 1291. They're not remedialists if they violate the injunction and if that results in a contempt work. Now, if they violate the injunction by continuing to pursue claims they shouldn't be allowed to pursue and we don't see contempt, the New Mexico case at that point- We're officers of the court. We don't violate the law. It's unseemly for counsel to violate the law to manufacture jurisdiction, which seems to me a perfectly defensible position to take. I think that- I don't want to push that too far. Many people would take that position. I think that is the clear import of Tronox is that the choice they face is to incur contempt and sanctions. So it's your position that Tronox, writ large, writes them out of court? Writes them out of this court now? Correct. Okay. The other point I would make, if they do proceed to violate the injunction and we don't see contempt and the New Mexico case goes forward, at that point Judge Cote's order is moot unless we were to seek contempt. That's why I was trying to explain Judge Nardini earlier. I don't know that she would have the authority to enter that kind of a nominal contempt order because if we're not seeking to enforce the benefit of our settlement agreement at that point, it seems like her injunction, which runs to our benefit, would simply be moot at that point. So can I ask you, what about your opponent's argument that when Judge Cote entered the settlement agreement, approved it and ordered it or so ordered it however many years ago, she said out loud, of course, look, this is bound to be interpreted in light of and limited by the identical factual predicate doctrine. That, I am telling you openly on the record, is a boundary and my order is to be understood in that light. That's not the party's projecting. That's not the party saying, oh, I'm sure Judge Cote had this in her mind. She said it, right? So why shouldn't we say, well, all we're doing is applying her ruling that she entered years ago and we're looking at it and did she modify it? And we're saying, well, yeah, because she was bound to apply the identical factual predicate doctrine correctly and therefore we are free to determine whether she has modified her earlier entered injunction or the settlement agreement by applying it in a way that is contrary to the terms as it was originally entered, subject, as she said on the record, subject to the identical factual predicate doctrine. Tell me why that, I think I've captured their argument. Tell me why that's wrong in your view. I think the problem with looking at it that way, Judge Nardini, is what Judge Cote was doing when she referred to the identical factual predicate doctrine was reciting a background principle of law. It's as if she said, and this contract would be void if it were unconscionable, but it's not unconscionable because any contract can always be voided.  You just said it would be void if it's unconscionable, but it's not. I don't think she was saying here, and this will be subject to the identical factual predicate doctrine, but by the way, there ain't nothing out there that's beyond it. So cut off the hypothetical second half and just say she put in there, this is subject to unconscionability defenses. The contract would be subject to unconscionability defenses whether she says that or not. For that to create appellate jurisdiction collapses the merits inquiry and what is supposed to be the deferential jurisdictional inquiry. What if she had put it in writing in the settlement agreement and there was a paragraph at the very end saying all of this language, all these cross-reference terms are subject, of course, to the limitation of the identical factual predicate doctrine, period. Then what? Again, I don't think... Different situation or identical situation what we have here? I don't think it matters because the identical factual predicate doctrine is just a background legal principle. The settlement agreement would be subject to that regardless of whether she said it or not. What this court recognized as an example of a situation where you would exercise de novo review at the jurisdictional stage is if the injunction turns on a term defined by law. So for example, if you had a settlement agreement that said, this settlement agreement doesn't cover any claims that arise under admiralty jurisdiction and you then had a question about whether a particular claim that was pursued later arose under admiralty jurisdiction or not. That is a term of law written into the settlement agreement that has to be understood and under Tronox would be reviewed de novo. But where you are talking about simply applying contractual terms at the scope of a release, unless the district court, who's in the best position to understand the scope of that settlement agreement, unless the district court obviously or blatantly misinterpreted the injunction, then there is no jurisdiction. And she simply didn't do that here. So why don't you, maybe just because I see the yellow coming on and we want to stay on pace, why don't you turn, if this is okay with my fellow panelists, turn to the merits question. Maybe if you'll start with, let's assume for the sake of argument, that we have to go through the analysis of whether the claims the New Mexico plaintiffs would like to bring forward are in fact within or outside the scope of the identical factual predicate doctrine. Why don't you take that? Sure. So the case that is controlling, this circuit's case that is controlling on that, that I don't think has been discussed yet today is Wal-Mart. In Wal-Mart, the court held that a tying case, that was case number one, and a boycott case, case number two, shared an identical factual predicate. Both cases alleged that Visa and MasterCard there used agreements in order to exclude competitors, in order to further separate antitrust conspiracies. The cases there focused on harm to different market segments. One was the credit card market, one was the debit card market. They had different theories. One was a boycott claim, one was a tying claim with different elements. Despite that, they shared an identical factual predicate. There was a common thread that ran through those cases, which was one particular rule, an exclusionary rule, which played a significant role in one of the cases, but only a tangential role in the other, was enough to satisfy the identical factual predicate test. That's the way to think about this here. The standard that the appellants are urging here, that any claim that requires proof of any further facts is enough to... Well, tell us what's the... You said in Walmart there was this overlap. It wasn't a full overlap, but the exclusionary rules kind of drove one set of claims a lot and one set of claims a little. What's the unifying fact or anti-competitive behavior, whatever it is, that drives both the new, let's call them new, auction-rigging claims, and the old claims that were settled? Sure. So a few points, if I could run through them. One, both cases allege that the banks conspired to lock in an inefficient CDS market that maximized their profits at a series of dealer-only working group meetings, so same meetings, in the fall of 2008 at the same time. Both cases allege that those meetings were spurred by pressure from the Federal Reserve Bank in order to make changes to the CDS marketplace after the 2008 crash. The Federal Reserve Bank's statements at the time confirm that it was pushing the banks to address both CDS trading, which was the subject of the Southern District case, and CDS settlement, subject to the current New Mexico case, over this same time period. Both complaints allege that the banks leveraged ISDA standard procedures for settling CDS contracts after a credit event in order to further both conspiracies. Say that last one again, because I want to make sure I understand it. Sure. In both the New York and the New Mexico complaints, there are allegations. In New York, it's Joint Appendix 359, paragraph 136. In New Mexico, it's Joint Appendix 812, paragraph 337, that the banks leveraged ISDA standard procedures for settling CDS contracts after a credit event in order to further each of these two conspiracies. So ISDA is playing a role in both of these. And it makes sense. That one there, it was that they were restricting the players in the buying and selling market by requiring you to have a trading desk so that you could then effectuate an auction, right? But that seemed like an ancillary thing. They weren't saying that there was actual misconduct in the auctioning. They're just saying that you had to have the attributes that enabled you to have an auction to then engage in various forms of misconduct, right? That's right. But the Identical Factual Predicate Doctrine doesn't require auction-rigging claims to have been brought in the first case any more than Walmart required the boycott claims to be brought in the tying claims. The point is they could have been brought because they arose out of the same common reasons. They could have been brought if they had known of the misconduct. But the allegations up front weren't that there was anything bad happening in the auctions. It's just that they were demanding that if you want to be part of the, whatever it was, the clearinghouses, you've got to have the ability to do auctions. But there was no suggestion that people were engaged in the monkey business in the auctions. No, they were not alleging auction-rigging at that time. But again, Walmart doesn't require them to have alleged auction-rigging at that time. I do want to be clear, though, because I think there's a difference between, yes, the original complaint, alleged auction-rigging, versus it could have. It sounds like we're clearly in the it could have in the Common Core Facts land. You're not claiming that there was an auction claim hidden between the lines that I've missed. No, we're in could-have territory. And under Walmart, just to quote from Walmart, a court may release not only those claims alleged in the complaint and before the court, but also claims which could have been alleged by reason of or in connection with any matter or fact set forth or referred to in the complaint. Both complaints, again, walk through how these time, space, origin, and motivation is the language of the case law. Same time, same meetings, same origin, the Federal Reserve Bank, same motivation, both cases allege that the banks were following the same playbook for the same reasons to maximize their positions in the CDS market. In the New York case, the allegation was that the banks wanted to prevent independent CDS exchanges from emerging so that only the banks would have complete information about CDS prices and, therefore, be able to use that information to their advantage. In the New Mexico... To wind up, it's your position that, right together, Walmart and Tronax establish we have no jurisdiction? I think Tronax establishes no jurisdiction. Walmart establishes, if there is jurisdiction, that we win under the identical factual predicate test because there is sufficient overlap here between these complaints, just as there was in Walmart. So that's your merits question. You don't think we should get to the merits, but if we get to the merits, you win on things like Walmart. Right. I know I'm over time. Why don't you take... I'd like to take a couple more questions, too. Ms. Robinson. We've been going for a while, so I think we have a little play in the joints. Yeah, I'd like to talk a little bit about the adequacy of representation, and I'm sort of thinking a little bit about the literary works case where you have a broad settlement, you have these different subgroups, and they have different economic interests. And so, as I'm understanding the case here, most, if not all, of the people in the New Mexico class bought and sold. We use this term, the CDS market. I think that that can become one of those terms that secretly stacks the deck right. There's the market for buying and selling these instruments, and then there's the market for valuing the bonds as a result of a default event in the subclass of people for whom those instruments actually lead to an event. And so, and I understand from your perspective, they're all the same. Everybody who's in the buying and selling has the loss associated with the exaggerated bid-offer spread, and that is the basis on which the distribution of funds to the class was determined based on the notice that went out. The people with respect to whom there was a credit event had a whole other loss that was never discussed in the notice. It was never used as a basis for calculation, and it's a separate loss having to do with not getting paid enough or having to pay too much depending on where they are or which side they're on. Why isn't this inadequate representation of the interests of those folks relative to the settlement? So there's a lot, I think, to unpack there. Yeah, I'm sorry. A few points. I want to get it in in case we lost time. That's up to you. First, the reason that I'm talking about this as one market is that CDSs are integrated products. From inception, they necessarily contain a mechanism to settle the CDS if a credit event occurs. When you buy the CDS, the settlement mechanism is baked in. To the extent you think about this as two markets, they are at least as interconnected, if not more so, than the debit card market and the time market. I'm talking about adequacy of representation. I want to focus on that. On the adequacy claim, cases like literary works were not collateral attacks on the judgment the way this is. Where you have a collateral attack on a judgment, it's the plaintiff's burden to show that the class plaintiffs in the earlier case didn't share the same claims and interests as the New Mexico plaintiffs do here. It's their burden to show that as the ones who are seeking to upend a class settlement, let alone a $1.8 billion class settlement. They've come forward with no evidence here that the Southern District class reps didn't have both the claims that they brought and potential auction rigging claims that they didn't bring. And that's a fundamental distinction between this case and a case like Super Spuds. Super Spuds was a case where, this court explained, the class plaintiffs didn't share the same claim as the absent class members. Here, in a collateral attack posture, it's their burden to show that the Southern District plaintiffs didn't share the same claims and interests as the New Mexico plaintiffs do here, and they simply haven't done that. Okay, so you've told me the burden and you've told me they haven't met it, but engage a little bit with the substance of it. How... We've got an express statement as to how it was calculated. We have all the documentation that reflects that the focus of this case was the bid-offer spread and the market for buying and selling the CDS instruments. What's the answer to that? Yeah, but we can infer that notwithstanding that singular focus, these other interests were adequately represented. Well, I think, first of all, the settlement agreement itself says, and Judge Cote referred to this in her order below at Special Appendix 17, the inclusion of unknown claims was separately bargained for. So the class did receive compensation for claims beyond just the ones that were pled in the New York... But that compensation was spread evenly among everybody in the class. I mean, doesn't that create, again, the different interests of these subgroups that the auction plaintiffs are essentially subsidizing the settlement of the other plaintiffs? That's exactly the kind of cross-subsidy that I thought that adequacy of representation was designed to get at. I don't think it does... Well, first, again, I do think that the procedural posture matters because we look at this with a different burden in this context than in the literary works context. But I also think that the theory of the New York complaint was that during that class period, I think it was 2008 to 2013, the defendant banks were conspiring in order to exclude competitors, so they were the only ones that you could get a CDS from. It doesn't make sense to think that these New Mexico plaintiffs, who now are bringing auction-rigging claims, got their CDSs from any place other than the same banks that allegedly conspired in the Southern District case in order to control that market. It's the same CDSs that are at issue here that were at issue there... But the CDSs aren't at issue, right? I'm sorry? It's not the auction mechanism that they're challenging, right? They're happy... As I understand it, they're not saying the fact that there's an auction mechanism built into these documents is the problem. It's the fact that there was funny business in how you executed it. So I think what they are alleging in New Mexico... I'll let them speak for their own claims, but I think they are alleging collusion in these individual auctions, but pursuant to the mechanism that was supposedly agreed to in these 2008 meetings. So I don't think they're separate in that way. Thank you. All right, thank you very much. We've kept you up past your time. Thank you. We'll hear from the appellant. On rebuttal, we're a little different. We gave you three minutes, and I will hold to that, but we're going to obey the red light. Fair enough. I will try very hard to get into three points, one on identical factual predicate, one on jurisdiction, and one on adequacy. So on identical factual predicate on Walmart, Walmart explicitly said that statement that the banks just read is limited by the identical factual predicate. That's what Walmart says. You can bring any claim that you could have brought supported by the factual predicate alleged in the complaint, and if you look at Walmart, the facts in the subsequent... We'll call them the subsequent claims were explicitly alleged, actually, in the complaint of the settled case. So, you know, they have... One case was about challenging the fixing of an interchange fee. That was explicitly alleged that the interchange fee was fixed. That was explicitly alleged in the settled complaint. Similarly, the other case was about exclusionary membership rules. Again, the claim and the facts underlying it explicitly alleged in the settled complaint. What Walmart says is, once you've alleged the facts, if you have different legal theories, those don't matter, but it's the facts that have to be there, and that's the difference between this case and Walmart. And I just want to point out that it would be impossible to settle a case on the banks theory going forward, because if what it meant is that any time there is funny business or a scheme that has to do with some product, then in order to settle that case, the plaintiff's counsel, ethical plaintiff's counsel, are going to have to get discovery into every other possible misconduct the defendants are conducting. But that's not right. I mean, every time you settle a case and sign a release, in New York, for example, every time you sign a case, you sign a, you know, lumber form release, you take the risk that there are facts you didn't know that may alter the value of the settlement. That's just the way the world works, isn't it? That's right, Your Honor, for an individual private settlement. But when class representatives, and I'll note, our clients here are absent class members. When class representatives settle on behalf of absent class members, there's a due process interest. Those representatives can only settle claims that they were given authority to represent. And if what we're saying, the authority to represent absent class members on claims is not limited to what's been alleged in the complaint, the facts, I don't mean the legal theories, but the facts alleged in the complaints. If you're correct about that, I'm paying a couple of billion dollars and can, as a practical matter, don't know or, and unable to get closure on this problem. I don't think that's correct because you know exactly what you're paying for. You're paying for any claims, and the banks know what misconduct they're committing. You're paying for any claims based on those facts. So you can value that. That's easy to value. If what you're trying to value is, is this somehow connected by a market or a product, that's going to be impossible. And ethical class counsel also are going to have trouble. I just want to very quickly make one more point, which is you were- Two seconds? Two seconds. No, that was it. Sorry. I really am going to hold you to that. Very interesting case. Thank you very much. Yeah, you both, I compliment you on your advocacy. It was very helpful. I know we got our money's worth out of both of you. So thank you very much. We will reserve decision. Thank you.